UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | |
|---|---|
| MARC A. STEPHENS,<br>Plaintiff,<br>v.<br><br>THE HON. EDWARD A. JEREJIAN, in his Official Capacity as Judge of the Superior Court of Bergen County;<br>CHIEF ARTHUR O'KEEFE, as an individual, and in his Official Capacity as Chief of the Englewood, New Jersey Police Department<br>JOHN JAY HOFFMAN in his Official Capacity as Attorney General of New Jersey<br>Defendants | CASE No. 15-3992<br>D. N.J No. 2:14-cv-06688-WJM-MF<br><br>APPELLANT'S ARGUMENT IN SUPPORT OF APPEAL |

## INTRODUCTION

The action is for deprivation of civil rights pursuant to 42 U.S.C 1983.

Marc Anthony Stephens, Plaintiff-Appellant, pro se, is an African-American individual who applied for a firearm permit and was denied in state court, and filed a separate and independent complaint in district court stating New Jersey firearm laws are facially unconstitutional, which was dismissed with prejudice. Appellant contend that the State of New Jersey's Firearm Laws, including but not limited to: N.J. Stat. §2C:39-2, 2C:39-3, 2C:39-4, 2C:39-5, 2C:39-6, 2C:39-9, 2C:39-14, 2C:58-3, 2C:58-3b, 2C:58-3c, 2C:58-3c(5), 2C:58-3d, 2C:58-3e, 2C:58-3f, 2C:58-3h, 2C:58-3i, 2C:58-3j, 2C:58-4a, 2C:58-4b, 2C:58-4c, 2C:58-4d, 2C:58-4f, 2C:58-5, 2C:58-6.1, 2C:58-7, 2C:58-10, 2C:58-12, 2C:58-15, 2C:58-17, 2C:58-19, and related statues such as N.J.A.C. 13:54, are all facially unconstitutional because based on historical analysis each statue was motivated by and passed through legislature based on racism and discrimination which are violations of the First, Second, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments of the United States Constitution.

On October 27, 2014, the plaintiff Marc Stephens, pro se, filed a Civil Complaint with the District Court which facially challenged the constitutionality of the entire New Jersey Firearm Statues enacted by its Legislature, **ECF no. 6, pages 1-41**. On August 4, 2015, the court denied plaintiffs civil complaint, Opinion and Order, **ECF no. 17, 18**. On August 8, 2015, Plaintiff filed a motion for reconsideration, **ECF no 19**. On November 13, 2015, the court denied plaintiffs first motion for reconsideration, Opinion and Order **ECF no. 23, 24**. On November 19, 2015, Plaintiff filed a second motion for reconsideration, **ECF no 25**. On December 1, 2015, the court denied plaintiffs second motion for reconsideration, **Order ECF no. 26**.

## ARGUMENT

**1. Whether the trial court erred in dismissing the plaintiff's complaint with prejudice holding that New Jersey Firearm permit and licensing laws are constitutional under Drake v. Filko, 724 F.3d 426, 429 (3d Cir. 2013). Appellant argues YES the court erred**:

McDonald v. City of Chicago (2010), which was decided **after** Heller, ruled **"[T]he State cannot interfere with the right of the citizen to keep and bear arms**. The right to keep and bear arms is

included in the fourteenth amendment, under `privileges and immunities.'" Proceedings in the Ku Klux Trials at Columbia, S. C., in the United States Circuit Court, November Term, 1871, p. 147 (1872)", **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020, at 3077-3083**. Drake v Filko ruling does not supersede the United States Supreme court opinion that states **cannot** enact licensing laws. In addition, New Jersey **admits** that they are enacting gun control laws, "Permits to carry handguns are "the most closely regulated aspect" of New Jersey's **gun control laws**. In re **Preis, 118 N.J. 564, 573 A.2d 148, 150 (1990)**. Individuals who wish to carry a handgun in public for self-defense **must first obtain a license**. N.J.S.A. § 2C:39-5(b)", see **Drake v. Filko, 724 F. 3d 426 - Court of Appeals, 3rd Circuit 2013 at 428-429**. "The **state cannot "enact any gun control law"** that they deem to be reasonable. Time and again, however, those pleas **failed**. Unless we turn back the clock or adopt a special incorporation test applicable only to the Second Amendment, municipal respondents' argument **must be rejected**", **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3046**, When slaves became citizens all 50 states passed firearm permit and license laws on all citizens which the United States Supreme Court has rejected in McDonald. In McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010, **the City argued**, "Article IV, § 2, prohibits only state **discrimination** with respect to those rights it covers, but does not deprive States of the power to deny those rights to all citizens equally". Id at 3075. The U. S. Supreme Court **rejected** this argument as "**implausible**", **Id at 3077**.

**2. Whether the trial court erred in denying plaintiff's right to amend the complaint and holding that the Rooker-Feldman doctrine bars the plaintiff from filing a separate and independent complaint in federal court after losing in State court regarding the constitutionality of New Jersey's Firearm permit and licensing laws. Appellant argues Yes the court erred**:

In appellant's complaint, the **Fifth cause of action** and prayer for relief are based solely on an "independent" facial challenge of New Jersey's entire firearm laws and should allow the case to proceed. *"Federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court. "Nor does § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., **then there is jurisdiction**..." GASH Assocs. v. Rosemont, 995 F. 2d 726, 728 (CA7 1993); accord Noel v. Hall, 341 F. 3d 1148, 1163-1164 (CA9 2003)"*. **Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 US 280 - Supreme Court 2005 at 293-294.**

**3. Whether New Jersey's permit and licensing laws are unconstitutional and should be reviewed by the court under Strict-Scrutiny because the right to keep and bear arms is a guaranteed, inalienable, and fundamental right. Appellant argues YES:**

"The Supreme Court recognizes race, national origin, religion and alienage as suspect classes; it therefore analyzes any government action that discriminates against these classes under **strict scrutiny**". **Hirabayashi v. United States, 320 U.S. 81 [5] and Korematsu v. United States, 323 U.S. 214 (1944); Adarand Constructors v. Peña, 515 U.S. 200 (1995); see United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010)**. "Strict scrutiny" was required because the classification created by the statute infringed upon a **fundamental right**, Zablocki v. Redhail, 434 US 374 – Supreme Court 1978 at 381. Drake v Filko ruling **does not** supersede the United States Supreme court opinion that race discrimination is a violation of the 14th amendment of United States Constitution. Drake v. Filko argument was about "justifiable need" requirements in New Jersey license scheme. Appellant argument is about discrimination. In addition, Drake v. Filko was incorrectly reviewed under **intermediate scrutiny**,

**4. Whether New Jersey's permit and licensing laws are unconstitutional and should be reviewed by the court under Strict-Scrutiny because New Jersey Legislature passed their firearm laws based on racism and discrimination. Appellant argues YES:**

To "[m]ake a colored man a citizen of the United States" would guarantee to him, inter alia, "a defined status . . . a right to defend himself and his wife and children; a right to bear arms"). **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3075**. "Many legislatures amended

their laws prohibiting slaves from carrying firearms to apply the prohibition to **free blacks** as well". **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3081.** Many states such as Florida, Kentucky, Louisiana, Maryland, Mississippi, Missouri, New Jersey, North Carolina, South Carolina, Tennessee, Texas, and Virginia took arms and firearms away from slaves and freedmen by enforcing a "Black Code", ch. 33, § 19, 1806 La. Acts pp. 160, 162 (prohibiting slaves from using firearms unless they were authorized by their master to hunt within the boundaries of his plantation); Act of Dec. 18, 1819, 1819 S.C. Acts pp. 29, 31 (same); An Act Concerning Slaves, § 6, 1840 Tex. Laws pp. 42-43 (making it unlawful for "any slave to own firearms of any description"), **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at footnote 18.** In debating the Civil Rights Act of 1871, Congress routinely referred to the right to keep and bear arms and decried the continued disarmament of blacks, **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3042**. As Representative Thaddeus Stevens is reported to have said, "[w]hen it was first proposed to free the slaves, and arm the blacks, did not half the nation tremble? **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3081-3082**. Some States formally prohibited blacks from possessing firearms. Ante, at 3038-3039 (quoting 1865 Miss. Laws p. 165, § 1, reprinted in 1 Fleming 289). Others **enacted legislation** prohibiting blacks from carrying firearms without a license, **a restriction not imposed on whites**, **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3082**. It was **always understood** that Citizens had the right to keep and bear arms – any arms.

**5. Whether New Jersey's legislature historical background and administrative records suggests intent to deprive African Americans from the right to keep and bear arms in violation of the fourteenth amendment of the United States Constitution. Appellant argues YES:**

Plaintiff points to the **fact** that the permit and licensing laws were created and passed through legislature not only in New Jersey, but **all 50 states**, which Both Heller and McDonald extensively addressed in their opinions the issues and links between gun licensing schemes and race discrimination, see **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2810**; see **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010, at 3036-3042, 3043-3044, 3068, 3075-3077, 3078, 3099, 3112, 3133**. **McDonald, 130 S.Ct. at 3047** (reiterating that "the scope of the Second Amendment right" is determined by **historical analysis** and not interest balancing). In New Jersey, in October 1694, "An Act concerning Slaves" was enacted; [§1] WHEREAS **complaint** is made by the inhabitants of this Province, that they are greatly injured by **slaves having liberty to carry guns** and dogs, into the woods and plantations, under pretence of guning, do kill swine. Be it **enacted by** the Governor, Council and Deputies in General Assembly met and assembled, and by the authority of the same, that no slave or slaves within this Province after publication hereof, be permitted to carry any gun or pistol, or take any dog with him or them into the woods, or plantations, upon any pretence whatsoever; unless his or their owner or owners, or a white man, by the order of his or their owner or owners, be with the said slave or slaves; [§4] And be it further enacted by the authority aforesaid, that if any person or persons shall **lend, give or hire out** to any slave, or slaves, pistol, gun or guns, the said person or persons so lending, giving, or hiring, shall forfeit the said pistol, gun or guns, or twenty shillings to the owner of the said slave or slaves, to be recovered as an action of debt as aforesaid. **East New Jersey Laws, October 1694, ch.II, "An Act concerning Slaves, &c.," L&S 340-342**. As mentioned in the complaint the fear of **slaves with guns** was a **"Public Safety"** Concern.

"An Act to prevent the Killing of Deer out of Season, and against Carrying of Guns and Hunting by Persons **not qualified**," ["And be it further Enacted by the Authority aforesaid, That this Act nor any part thereof, shall be construed to extend to Negro, Indian or Mullato Slaves, so as to commit them to prison, during the Time in this Act limitted, in case they should be Guilty of any of the Offences in this Act prohibited, but that and in such case such Indian, Negro or Mullato Slave killing and destroying any Deer as aforesaid, or **carrying or Hunting with any Gun, without Lisence from his Master**, shall, at the Publick Whipping post, on the bare Back, be Whipt, not exceeding twenty Lashes for every such Offence, for which Whipping the Master shall pay to the Whipper the Sum of Three Shillings.."]. **May 5, 1722, 2 Bush 293, 295; 1 Nevill [8 Geo. I] ch.XXXV, §6, p.102.**
http://njlegallib.rutgers.edu/slavery/acts/A15.html

In 1751, in New Jersey "An Act …to prevent Negroes and Molatto Slaves,…from meeting in large Companies,…and from hunting or carrying a Gun on the Lord's Day was enacted. This act is similar to **N.J.S.A 2C:39-14b**. "[§2] AND BE IT FURTHER ENACTED, by the Authority aforesaid,

that if any Negro or Molatto Slaves shall at any Time hereafter **Meet and Assemble together**, more than to the Number of Five, unless being on his, her or their Masters or Mistresses Business and Employment; the Constable or Constables on Information or Knowledge thereof, shall, and are hereby required to apprehend the Negro and Molatto Slaves that shall so meet, and carry them before the next Justice of the Peace, who is hereby required and directed to order him, her or them to be whipped on their bare Backs at his Discretion "[§3] AND BE IT FURTHER ENACTED, by the Authority aforesaid, That if any Negro or Molatto Slave or Slaves, shall be seen or found from his or their Masters House, after the Hour of Nine at Night, except on their Masters or Mistresses particular Business, or shall be seen to hunt, **or carrying a Gun** on the Lord's Day; the Constable or Constables of such Town or Precinct, on Information or Knowledge thereof, shall and are hereby required and directed, to apprehend and carry such Negro and Molatto Slaves before the next Justice of the Peace, who shall order such Negro or Molatto Slave or Slaves, if found Guilty, to be whipped as by the preceding Clause of this Act is directed". **Oct. 25, 1751, 3 Bush 180-181; 1 Nevill [25 Geo. II] ch.CXI, p.443-444; Allinson ch. CCXLI, p.191-192. Note: Allinson gives date as Oct.23,1751. http://njlegallib.rutgers.edu/slavery/acts/A18.html**. "Today, no less than 50 years ago, the solution to the problems growing out of race relations "cannot be promoted by depriving citizens of their constitutional rights and privileges," Buchanan v. Warley, supra, 245 U. S., at 80-81, **Watson v. Memphis, 373 US 526 - Supreme Court 1963 at 539**.

**6. Whether Citizens must first obtain a permit or license to carry firearms at home and in public**. **Appellant argues NO**:

In Heller and McDonald, the court recognized the right to keep and bear arms to be fundamental, "the right to keep and bear arms was "one of the **fundamental rights** of Englishmen," **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3036, 3037, 3040, 3041, 3042, 3046, 3061, 3064, 3068, 3073, 3131.** "The right to keep and bear arms applies to the States through the Fourteenth Amendment's Due Process Clause because it is "**fundamental**" to the American "scheme of ordered liberty," ante, at 3036 (citing Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)), and "`deeply rooted in this Nation's history and tradition,'" ante, at 3036 (quoting Washington v. Glucksberg, 521 U.S. 702, 721, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997)), **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3059.**
In **Zablocki v. Redhail, 434 U.S. 374 (1978)** the U.S. Supreme Court decision held that Wisconsin Statutes §§ 245.10 (1), (4), (5) (1973) violated the Fourteenth Amendment equal protection clause. Section 245.10 required noncustodial parents who were Wisconsin residents attempting to marry inside or outside of Wisconsin to seek a court order **prior to** receiving a marriage **license**. In order to receive such a court order, the noncustodial parent could not be in arrears on his or her child support, and the court had to **believe** that the child(ren) would not become dependent on the State. New Jersey Firearm laws are forcing citizens to obtain court approval **prior to** obtaining a permit or license to keep and bear arms which are facially unconstitutional, **see Drake v Filko**. Marriage, just like the right to keep and bear arms, was held to be a **fundamental right**. On the merits, the three-judge panel analyzed the challenged statute under the Equal Protection Clause and concluded that "**strict scrutiny**" was required because the classification created by the statute **infringed upon a fundamental right**, the right to marry. **Zablocki v. Redhail, 434 U.S. 374 (1978) at 381.** "Since the means selected by the State for achieving these interests unnecessarily impinge on the right to marry, the statute **cannot** be sustained", **Id at 388.** The "right to marry", and "the right to carry" firearms are **fundamental rights**.
"The right to keep and bear arms is guaranteed by the Fourteenth Amendment as a privilege of American citizenship", **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3088.** "The use of firearms for self-defense was often the only way **black citizens** could protect themselves from mob violence", **Id at 3088.** "The record makes plain that the Framers of the Privileges or Immunities Clause and the ratifying-era public understood—just as the Framers of the Second Amendment did—that the right to keep and bear arms was essential to the preservation of liberty", **Id at 3088.** Heller concluded, "Meaning of the Operative Clause. Putting all of these textual elements together, we find that they guarantee[s] the individual **right to possess and carry weapons** in case of confrontation," a meaning that "is strongly confirmed by the historical background of the Second Amendment." **District of Columbia v. Heller, 554 U.S. 570 (2008).**
The Supreme Court in **Dred Scott v. Sandford** stated if African Americans were considered U.S. citizens, "It would give to persons of the negro race, who were recognized as **citizens** in any one State of

the Union, the right...<u>to keep and carry arms **wherever they went**</u>…and endangering the peace and safety of the State". **Dred Scott v. Sandford, 60 US 393 - Supreme Court 1857 at 417. McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3068.**

**7. If the State of New Jersey can ban arms, firearms, ammunition, and interfere with citizen's right to keep and bear arms due to public safety concerns**. <u>Appellant argues NO</u>:

Heller states, In Nunn v. State, 1 Ga. 243, 251 (1846) "Its opinion perfectly captured the way in which the operative clause of the Second Amendment furthers the purpose announced in the prefatory clause, in continuity with the English right: "The right of the whole people, old and young, men, women and boys, and **<u>not militia only</u>**, <u>to keep and bear arms of **every description**</u>, and not such merely as are used by the militia, <u>shall not be infringed, curtailed, or broken in upon</u>, **in the smallest degree**; and all this for the important end to be attained: the rearing up and qualifying a well-regulated militia, so vitally necessary to the security of a free State. Our opinion is, that **<u>any law</u>**, <u>State or Federal, is **repugnant to the Constitution**, and **void**, which contravenes this right</u>, originally belonging to our forefathers, trampled under foot by Charles I. and his two wicked sons and successors, re-established by the revolution of 1688, conveyed to this land of liberty by the colonists, and finally incorporated conspicuously in our own Magna Charta!" **Id at 2809**.

"It may be objected that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause. But as we have said, the conception of the militia at the time of the Second Amendment's ratification <u>was the body of **all citizens** capable of military service, who would bring the sorts of lawful weapons that they possessed at home to militia duty</u>. It may well be true today that a militia, to be as effective as militias in the 18th century, **would require sophisticated arms that are highly unusual in society at large**. Indeed, it may be true that no amount of small arms could be useful against modern-day bombers and tanks. But the fact that modern developments have limited the degree of fit between <u>the prefatory clause and the **protected right** cannot change our interpretation of the **right**</u>". **Id at 2817**. ("**<u>A statute</u>** which, under the pretence of regulating, <u>amounts to a destruction of the right</u>, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, **would be clearly unconstitutional**", State v. Reid, 1 Ala. 612, 616-617 (1840)). **Id at 2818.**

"A right deemed **fundamental** carries with it an implicit and inherent recognition of its necessity to a free people. States have **no compelling (or even legitimate) interest** <u>in depriving people of their constitutional rights</u>, and the State **cannot** point to the impact of its practice – the suppression of constitutional rights – as its interest". See **Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd., 502 U.S. 105, 120 (1991)**. "We expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing", 554 U.S., at ___ - ___, 128 S.Ct., at 2820-2821, **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3047.** No matter how laudable the end, <u>the Supreme Court has long made clear</u> that the **Constitution disables** the government from employing certain means <u>to prevent, deter, or detect violent crime</u>. **See, e.g., United States v. Jones, 132 S. Ct. 945 (2012); Kennedy v. Louisiana, 554 U.S. 407 (2008); Kyllo v. United States, 533 U.S. 27 (2001); Miranda v. Arizona, 384 U.S. 436 (1966); Mapp v. Ohio, 367 U.S. 643 (1961); see also Heller II, 670 F.3d at 1296 (Kavanaugh, J., dissenting).**

As discussed herein, NJ permit and licensing laws violates 1st, 2nd, 4th, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution and must be **struck down**. Firearm licensing only applied to **SLAVES**. Prior to New Jersey's "acts concerning slaves", <u>even slaves carried arms</u>.

Respectfully submitted,

*[signature]*

Marc Stephens

201-598-6268